UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.09-60621-CIV-MORENO
     (06-60130-CR-MORENO)
MAGISTRATE JUDGE P.A. WHITE

GARY N. PARKER,                       :

          Movant,                     :

v.                                    :          REPORT OF
                                             MAGISTRATE JUDGE
UNITED STATES OF AMERICA,              :

          Respondent.                 :
_____

          Gary N. Parker filed a pro se motion to vacate pursuant to 28
U.S.C. §2255, attacking his conviction and sentence imposed
following a jury trial in Case No. 06-60130-cr-Moreno.

          This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Proceedings for
the United States District Courts.

          For its consideration of the motion to vacate (Cv-DE#1), the
Court reviewed the government's response to an order to show cause
with multiple exhibits (Cv-DE#14), the movant's reply (DE#20), and
the underlying criminal file.  The movant's conviction and sentence
were affirmed on December 12, 2008, by the Eleventh Circuit Court
of Appeals, United States v Parker, et al, 302 Fed. Appx. 889 (C.A.
11(Fla)2008). This motion, filed on April 27, 2009, is timely
filed.

Parker raises the following thirty-two claims:

1. He was denied his Sixth Amendment right to due process when the prosecutor elicited improper irrelevant "venting" testimony from witnesses, and his attorney rendered ineffective assistance when he failed to object to the testimony;

2. Counsel rendered ineffective assistance, and movant's Sixth Amendment right to due process was denied, when counsel failed to request a jury instruction that the government must allege and prove that movant had no intention of performing on the contract "at the time the contract was entered into;"

3. He was denied his Sixth Amendment right to due process when the prosecutor committed misconduct when he deliberately misrepresented relevant and material evidence to the Court and did so in front of the jury, and counsel rendered ineffective assistance when he failed to object to the prosecutor's misconduct;

4. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to impeach the government's "key" witness with a prior inconsistent sworn statement;

5. His Sixth Amendment right to due process was violated when the prosecutor misled the jury with false statements during closing arguments, and counsel rendered ineffective assistance when he failed to

2

object to the prosecutor's misconduct
concerning the false statements;

6. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to subpoena clients who received funding
from Parker Leasing & Financing Service;

7. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to present to the jury certain business
records which would have refuted a
critical government argument;

8. Movant was denied his right to due
process when the prosecutor committed
misconduct by not delivering to the grand
jury the subpoenaed business records of
Parker Leasing & Financing Service;

9. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to request a jury instruction that "the
intent of the parties to a contract is
determined by the plain language of the
contract provided the contract is clear
and unambiguous;"

10. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to request a jury instruction stating
when a party to a contract has a
condition precedent to performance by the
other party then the first party's
failure to perform the condition
precedent relieves the other party from

performance;

11. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to properly communicate with movant prior to trial;

12. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to request a jury instruction that a "mere violation of a contract is not a criminal offense" and "a breach of contract does not support a mail fraud conviction;"

13. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to present a good faith defense;

14. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to provide any defense in movant's case;

15. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to conduct an adequate, meaningful and reasonable pre-trial investigation into movant's case;

16. Movant was denied a constitutional right because he was actually innocent of an offense he was convicted of when the Supreme Court held that movant's activities did not fall within the scope of the statute in which he was convicted;

17. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to object to the government's inappropriate use of expert testimony;

18. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to object to the variance between what was in the indictment and what was proven at trial;

19. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to follow movant's instructions to subpoena certain government witnesses to testify for the defense;

20. Counsel rendered ineffective assistance, and movant was denied his right to due process, when counsel failed to subpoena Bobbie Shaw to testify;

21. Counsel rendered ineffective assistance, and movant was denied his right to due process, when counsel failed to subpoena Jennifer Campbell to testify at movant's trial;

22. Counsel rendered ineffective assistance, and movant was denied his right to due process, when counsel refused to obtain an expert witness to testify at movant's trial;

23. Counsel rendered ineffective assistance, and movant was denied his right to due process, when counsel failed to request a

jury instruction that fraud cannot be alleged when it is based upon a representation concerning an issue covered by or contradicted by a clause in the contract;

24. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to object to the reasonableness of movant's sentence;

25. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel repeatedly used the name Parker Financing and Leasing when he should have said Parker Leasing & Financing Service;

26. The government committed prosecutorial misconduct when it repeatedly used the terms "The Parkers" and "Parker Leasing" to manipulate the jury, and counsel rendered ineffective assistance by not objecting to the government's misconduct, and movant was severely prejudiced by both the government's misconduct and counsel's ineffective assistance;

27. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment right to due process, when counsel failed to conduct a criminal background check, a civil background check, or any other type of background check to obtain information for the purpose of impeaching government witnesses;

28. Counsel rendered ineffective assistance, and movant was denied his Sixth Amendment

6

right to due process, when counsel failed
to present evidence of an alibi defense;

29. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to present exonerating evidence developed
from a prior civil suit involving movant
and Parker Leasing & Financing Service;

30. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to request a severance at trial;

31. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to investigate whether or not movant was
properly indicted by at least twelve
members of the grand jury as required by
Rule 6(f) of the Federal Rules of
Criminal Procedure; and

32. Counsel rendered ineffective assistance,
and movant was denied his Sixth Amendment
right to due process, when counsel failed
to follow movant's instructions and
subpoena a representative from the Bank
of America to refute critical government
evidence.

### Factual and Procedural History

On July 11, 2006, Gary Parker, his brother Robert Parker and two
co-defendants were indicted for multiple counts of conspiracy to
commit mail and wire fraud, wire and mail fraud, conspiracy to
launder money and money laundering, and participating in a conspiracy

of evading income taxes. The movant was convicted, following a jury trial.

On July 19, 2007, the Court sentenced him to 240 months in prison, and a three year term of supervised release. Parker's conviction was affirmed on appeal. <u>United States v Parker, et al</u>, <u>supra</u>.

The facts in this case are as follows:[1] The movant Gary Parker operated Parker Financing and Leasing, Incorporated (PFLI) with his father and brother. The business was supposedly engaged in the financing and leasing of commercial equipment. The business was dissolved in 2001, but continued to operate under PFLI and Parker Leasing and Finance Service (PLFS).[2]

The business offered to provide capital for equipment leasing and operating capital. Customers were seeking funds to purchase equipment or expand and develop business. They would identify third party vendors for the purchase of assets or equipment. Parker Leasing represented they were able to secure funding on behalf of the customers from Parker's investors and financial institutions and referred to these loan transactions as commercial equipment leases. The customers signed lease agreements and had to make advance payments before funds were secured.

Once Parker Leasing received the advance fees from the customers, they failed to deliver the promised funding or to purchase any equipment. At least 29 individuals were affected by this sham

---

[1]The facts were taken from the transcripts, the Appellate Decision, and a more detailed version can be found in the government's response.

[2]The businesses are referred to as Parker Leasing.

business, and lost over four million dollars.

On April 26, 2005, a federal search warrant was executed at the Parker Leasing Offices, and bank records were subpoenaed and reviewed. Searches revealed that money was moved from one account to another and converted to cash. Over two hundred thousand was seized and is subject to forfeiture. [3]

Further, money was diverted to nominee bank accounts for the purpose of defrauding the Internal Revenue Service. Parker failed to file income tax for four years, failing to report over one million dollars.  Trial commenced on December 5, 2006, and the petitioner was found guilty.

A Pre-sentence Investigation Report was prepared. It indicated that Gary Parker ran the business with his brother Robert, upon the death of their father, Paul Sr. He  was responsible for the creation of many of the legal documents related to the fraud, and he laundered the proceeds from the activities and controlled all the funds with his brother, such that he was considered an organizer and leader of criminal activity. He received enhancements for his leadership role.

A Sentencing Hearing was held before the Honorable Federico Moreno on July 19, 2007. The petitioner was sentenced to 240 months, to be followed by 3 years of supervised release.

Anaylsis and law

There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent

---

[3]The PSI includes numerous detailed accounts of companies which trusted Parker to provide them with funds for their business, paid advanced fees, and never received the funding. ¶10-17

a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. <u>Belford v. United States</u>, 975 F.2d 310 (7 Cir. 1992).

However, a claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4 Cir. 1996). Attorney error does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which is discussed in further detail, *infra*. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

For Parker to succeed on a claim of ineffective assistance of counsel, he must demonstrate that counsel's performance was deficient, and that there is a reasonable probability that, but for counsel's errors, the result would have been different, in other words that the petitioner was prejudiced as a result of counsel's performance. <u>Strickland v Washington</u>, 466 U.S.668 668, 694 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1161 (11 Cir. 2003), <u>citing</u> <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert. den'd</u>, ___ U.S. ___, 123 S.Ct. 70 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, <u>supra</u> at 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992).

<u>Claim 1</u>

The movant alleges counsel failed to object to the government's improper elicitation of irrelevant and prejudicial "venting" testimony from the victim witnesses at trial, in light of the Court's statement that the evidence against him was weak. [4]

---

[4]As to the allegation that the evidence against the petitioner was weak, the sufficiency of the evidence was raised on direct appeal, and the Appellate Court found the evidence sufficient, and affirmed the conviction. <u>United States v Gary Parker</u>, <u>supra</u>..

To succeed on this claim, Parker must demonstrate that the victim-impact evidence was so unduly prejudicial, it rendered the trial fundamentally unfair. <u>Payne v Tennesse</u>, 501 U.S. 808 (19991). To determine the prejudice, the Courts must view the proceeding in its entirety.

Eight witnesses testified at trial that they suffered monetary losses as a direct result of the defendants' fraudulent activities. The victim witnesses testified to the loss of their businesses, loss of employees and in some cases personal bankruptcy caused by the movant's fraudulent practices.

Counsel was able to lessen the impact of some of the testimony by revealing that not all of the losses were suffered as a result of the defendants' actions, but resulted from other factors.

Further, the Court sustained an objection by counsel for movant's co-defendant as to the government's attempt to elicit testimony from a victim witness. The Court explained to the jury:

> THE COURT: I'm not trying to prevent you from venting but we don't do venting in court, we just deal with the facts that are absolutely necessary for the jurors to determine whether there's sufficient evidence of guilt of the defendants' accusations. (CR DE#306 p. 484)

Additionally, at the end of the trial the Court instructed the jury that they were not to be influenced in any way by sympathy or prejudice for or against the defendants or the government. (CR DE#232 Jury Instruction No. 2.)

Lastly, the movant's defense during trial had been that he was not involved in the fraud, had not dealt with the witnesses, and was located in Tennessee throughout the entire period the fraud was committed. Therefore, counsel's decision not to object to the testimony of victim impact was a sound strategy. The petitioner has failed to demonstrate that he was prejudiced by counsel's performance. <u>Strickland</u>, <u>supra</u>.

<u>Claim 2</u>

In this claim the petitioner alleges that counsel failed to request a jury instruction to the effect that the government was required to allege and prove that he had no intention of performing on the contract at the time the contract was entered into. The movant claims that proof of intent is required to support a fraud conviction.

The movant has not supported this claim with any case law. The Jury instructions do not include any requirement that the government allege or prove that his intent to defraud was clear at the onset, only that there was an ultimate goal at some point to defraud. <u>See</u>; Jury Instructions 11 and 12 (CR DE#232).

Further, in opening statement counsel stated that Gary Parker did not have anything to do with contracts entered into in this case, that he had no contact with the witnesses and lived outside of Southern Florida. Counsel argued that money sent to the defendant from the Florida corporation was a gift from his father for his children. (CR DE#304 p. 38, 42-47). If counsel had sought proof of intent to commit fraud in the jury instructions, it would have been in contradiction to his defense.

13

Claim 3

Movant claims counsel failed to object to the government's misconduct in deliberately misrepresenting relevant and material evidence to the Court and jury. He states that two victim-witnesses falsely testified they possessed letters of credit from a bank, and that the government knew there were no letters of credit, but misled the jury into believing there had been.

As stated above, this testimony was irrelevant to the movant's defense, which was that he had nothing to do with the contracts. There was more than sufficient evidence at trial to demonstrate that defendants never intended to perform on any of the contracts, even if letters of credit had been provided. This claim is without merit.

Claim 4

Parker alleges that counsel failed to impeach the government's key witness Hope Rocillo, a former employee, with a prior inconsistent, sworn statement in which she specifically stated during an FBI interview that the movant had no involvement in the fraudulent actions, and then gave a different version of events at trial. The movant states counsel should have impeached her on the stand with her prior inconsistent statement.(Parker includes referenced statement with his petition as Exhibit A)

Review of the petitioner's Exhibit reveals that the FBI interview he refers to is not Rocillo's sworn statement. It therefore would be useless for impeachment purposes. Further, the exhibit indicates that Rocillo stated she did not know whether Parker Leasing was engaging in anything wrong or dishonest. (DE#1 Exh A p.5). On the stand, Rocillo stated that she could not remember many things during

the FBI interview.[5] An attempt on cross examination to impeach the witness on her prior statements would not have yielded much as she stated she did not remember.

Claim 5

The movant claims that counsel failed to object to the government's misconduct when it made misrepresentations during closing argument. (CV DE#1 p 17) The government argued that there were multiple communications between Gary Parker and his brother, between Florida and Tennessee. It was established during trial that the evidence linking Parker to the fraudulent scheme was demonstrated by the multiple phone calls and faxes from Florida sent to him in Tennessee. The government's statement that these communications went back and forth between Florida and Tennessee, rather than from Florida to Tennessee, does not lessen the evidence against him. Other attempts by Gary Parker to distance himself from the scheme, such as referring to his company by various names, not distinguished by the prosecutor during argument, again would not have changed the outcome of the trial. This claim is another attempt to argue the sufficiency of the evidence which was upheld on Direct Appeal. United States v Gary Parker, supra.

Claims 6 & 7

The movant claims that counsel failed to subpoena allegedly satisfied former clients who had actually received funding from Parker Leasing & Financing Service, to testify on his behalf (Claim 6), and failed to introduce business records of Parker Leasing and

_____

[5]Counsel for both defendants vigorously cross examined Rocillo regarding her drug use, and its effect upon her memory. (CR DE#307 p 790-794, 800-8091, 804)

Financial Service to contradict the government's claim that no normal business records for the company existed. (Claim 7), as he requested counsel to do.

Although Parker claims that there existed many satisfied customers, he failed to provide evidence to support this claim. The e-mail Parker sent to counsel (movant's Exhibit 1) did not provide any names. Nor has movant provided any business records of Parker Leasing and Financing Service to support his claims.

Rocillo testified at trial that every deal seemed to fall th rough, and that there was nothing legitimate in the office from any legitimate lending companies which would have funded the deals (CR DE#307,p 751), and no computer at the company to organize business records. (Id at 768). Her testimony was consistent with admissions made by the movant's co-defendant and brother, Robert Parker at sentencing, where he admitted that "everything was fraudulent and we never intended to fund any of the deals (CR DE# 300 p 44).

Further, in an e-mail sent to counsel on June 29, 2006, the movant stated that there is no evidence any contracts were ever funded.  He claimed he didn't know whether any deals were ever funded. Because there is no evidence of any clients in which the contracts were satisfactorily consummated, or evidence of legal business records, counsel could not be considered ineffective for failing to produce such evidence. (DE#1 Exh 8,p 10).

Claim 8

The movant claims the prosecutor intentionally failed to deliver subpoenaed records of Parker Leasing and Financing to the grand jury, in an attempt at manipulating the jury. The government argues this

claim is procedurally barred, as Parker failed to raise this issue on direct appeal. To overcome a procedural default the movant must demonstrate cause and actual prejudice for failing to raise this issue. <u>United States v Frady</u>, 456 U.S. 152, 170 (1982).

To establish Cause, the movant argues that prosecutorial misconduct was not an appropriate issue to raise on direct appeal. (Pet. P 28). This assertion is incorrect, and as such, this claim should be barred from review.

Further, the claim lacks merit. The movant claims the government intentionally failed to deliver boxes of business records to the grand jury, thereby enabling the prosecutor to argue to the jury that the lack of business records reflected the defendant's criminal intent.

This claim fails, as the government is under no duty to bring exculpatory evidence to the grand jury's attention. <u>United States v Waldon</u>, 363 F.3d 1102 ( 11 Cir. 2004). Moreover, the trial conviction finding guilt beyond a reasonable doubt renders any alleged grand jury error harmless. <u>United States v Aldrige</u>, 561 F.3d 759 (8th Cir. 2009).

Further, the movant and co-defendant failed to introduce legitimate business records at their trial. The government therefore was free to argue the lack of records, when no legitimate records had been introduced at trial.

<u>Claims 9 and 10</u>

Movant claims counsel failed to request a jury instruction to

the effect that "the intent of the parties to a contract is determined by the plain language of the contract provided the contract is clear and unambiguous". (DE#1 p 29)(Claim 9) . The movant claims this is well established Eleventh Circuit law. The plaintiff provides no established precedent for this claim.

In claim 10, the movant claims counsel failed to request a jury instruction to the effect that when a party to a contract has a condition precedent to performance by the other party, then the first party's failure to perform the condition precedent relieves the other party from performance. (CV DE#1 p 33) He states that each of the victims failed to perform a condition precedent by failing to provide a letter of credit to secure the contract.

Counsel's failure to request the above stated jury instructions does not rise to a level of ineffective assistance. These instructions are civil case jury instructions, and not applicable to a criminal trial. Further, they would be in contradiction to the movant's claim that he was not involved with any of the contractual agreements. Counsel cannot be considered ineffective for failing to request a jury instruction that contradicted his theory of defense.

<u>Claim 11</u>

The movant claims that counsel failed to properly communicate with him prior to trial, other than sending him copies of court filings without explanation. (DE#1, p 2-16, e-mail exhibits 1-14)

The government includes as Exhibit C copies of e-mails sent to the movant by counsel which contradict his allegations. Counsel clearly sent him numerous documents and summaries of records, including copies of those the petitioner "demanded". Counsel sought

his help in linking witnesses to specific contracts, and asked him to review the documents and call him if there were any questions. Counsel commented on the petitioner's hostile attitude, and stated that he would continue to inform the petitioner of the progress in the case in the same manner he did with all his clients.

Clearly counsel communicated with his client. Further, the plethora of evidence and witnesses that the movant alleges counsel failed to introduce or impeach were irrelevant to movant's theory of defense, as demonstrated above.

Claim 12

The movant claims counsel failed to request a jury instruction to the effect that the "mere violation of a contract is not a criminal offense", and a "breach of contract does not support a mail fraud conviction" (CIV DE#1 p 37) (Claim 12). He claims that at no time was the jury instructed that they were allowed to consider his offense as a breach of contract, but were only instructed on fraud.

In support of this claim, the movant cites to United States v Chandler, 388 F.3d 796, 803 (11 Cir. 2004) where the defense requested the instruction that a breach of contract does not support a mail fraud conviction. This issue was not the holding of the case, but a recitation of the facts that took place during the trial in this case.

Further, there is no factual basis in the evidence to support this theory of defense. The movant claims he had no knowledge of the contracts, did not take part in the negotiations concerning them, and believed any proceeds from the contracts were gifts from his father.

19

This instruction did not support the movant's theory of defense.

<u>Claim 13</u>

Movant claims that counsel failed to present a good faith defense (CV DE#1 p 40). Parker claims that he relied on the advice of Attorney Ira Marcus that the business dealings of the company were legitimate.

To raise a defense of good faith based upon reliance on counsel, the petitioner must show that he "fully disclosed all material facts to his attorney", and "relied in good faith on the advice given by the attorney". <u>United States v Petrie</u>, 302 F.3d 1280, 1287 (11 Cir. 2002).

There is no evidence in the record that the movant meets either prong of <u>United States v Petrie</u>, <u>supra</u>. In the petitioner's e-mail he indicates that his brother Paul Parker relied upon attorney Ira Marcus. To state that the petitioner relied upon the advice of counsel would be in direct contradiction to his theory of defense, that he had nothing to do with the contracts or victims.

<u>Claims 14, 15</u>

Claims 14 and 15 are a continuation of Claim 13. In Claim 14, the petitioner alleges counsel failed to provide any defense in his case, and in Claim 15, he alleges that counsel failed to conduct an adequate pre-trial investigation into his case.

The movant argues that he provided counsel with over one hundred potential witnesses, and counsel failed to call any witnesses at trial. He states that counsel cross-examined six of the nineteen

20

witnesses called, and failed to conduct a meaningful cross-examination. He argues that Attorney Marcus should have been called to demonstrate a good faith defense, as well as clients who were legitimately funded. He claims counsel failed to impeach Ms. Rocillo, and that he should have obtained boxes of business records that were in the possession of Attorney Marcus to demonstrate the company possessed legitimate records.

Many of these claims have been discussed above, in one form or another. Claims related to counsel's failure to have Attorney Marcus testify to a good faith defense, and failure to present legitimate business records during trial have been discussed above.

In contradiction to the petitioner's assertion that counsel failed to pursue any defense on his behalf, it has been previously stated that counsel pursued the defense that the petitioner was not involved with any of the illegal business dealings. In government Exhibit B, p 7, counsel acknowledges that the petitioner sought to subpoena about one hundred witnesses, identified as officers, owners, and Board Directors. The movant fails to state the names or otherwise identify any specific witness who would have offered exculpatory testimony. As such, the issuances of a multitude of subpoenas would have been a massive fishing expedition which counsel is not obligated to do.

As to counsel's failure to cross-examine government witnesses, none of the witnesses had any contact or knowledge of the movant, as such cross-examination would have served no purpose. Counsel did cross-examine several of the victim witnesses to establish that they did not know the movant, had no knowledge of his involvement in the fraudulent contracts, and had never sent money directly to him. (CR DE# 305 p 155-157, 212-213, 337-338) (CR DE# 306, 448-452) (CR DE#

307 p 634-643).

The record reveals that counsels for both the movant and his co-defendant brother cross-examined Ms. Rocillo, resulting in the jury being aware of the benefits she received for her plea and testimony, her extensive use of narcotics, her bipolar condition, and loss of memory.

Counsel for the co- defendant cross- examined several witnesses in an attempt to tarnish their credibility, and it is unclear what further attempts counsel could have made on the defendant's behalf.

<u>Claim 16</u>

Movant claims that his substantive and conspiracy convictions for money laundering were improper, because the act of paying expenses of a criminal operation out of the gross income is not punishable as money laundering. (CV DE# 1 p 52) The movant relies upon <u>Santos v United States</u>,553 U.S.507 (2008).

In <u>Santos</u>, the Supreme Court construed an ambiguity in the federal money-laundering statutes in favor of the defendants and overturned their convictions. <u>United States v. Santos</u>, <u>supra</u>. At issue was whether the term "proceeds" as employed throughout the statute meant "receipts" or "profits." See <u>id.</u> at 2024. Because the defendants had been convicted for transactions involving the receipts of illegal activity that were not the profits of that activity, the definition of the term was central to the validity of their convictions. Writing for the majority, Justice Scalia noted that profits and receipts were both accepted synonyms for proceeds, and that the rule of lenity required the resolution of this ambiguity in favor of the defendants. See <u>id.</u> at 2025.

It should be noted that although the Supreme Court has not made the <u>Santos</u> decision retroactively applicable to cases on collateral review, this Court has found cases in which the Eleventh Circuit has recently determined that the <u>Santos</u> decision is retroactively applicable. See <u>King v. Keller</u>, 2010 WL 1337701 (11th Cir. 2010); <u>Weeks v. United States</u>, 2010 WL 2332084 (11th Cir. 2010). Specifically in <u>Weeks</u>, wherein the petitioner filed a motion to vacate pursuant to 28 U.S.C. §2255 arguing that the district court erred in failing to consider the timeliness of his petition in light of it having been filed within one year of the Supreme Court's decision in <u>Santos</u>, the Eleventh Circuit determined that <u>Santos</u> retroactively applies to cases on collateral review, including those raised pursuant to 28 U.S.C. §2255. <u>See</u> <u>Weeks</u> at *3-4.

However, despite <u>Santos'</u> retroactive applicability, this claim is nonetheless without merit. The Eleventh Circuit has found that the <u>Santos</u> holding has "limited precedential value," and therefore it would not extend that holding to a money laundering case in which the proceeds came from conspiracy to commit wire and mail fraud. <u>United States v. Demarest</u>, 570 F.3d 1232 (11th Cir. 2009). Specifically, the Eleventh Circuit held that "[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" The narrow holding in <u>Santos</u>, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds <u>Demarest</u> laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking." <u>Id.</u> (<u>quoting</u> <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977)). Thus, it appears that <u>Santos</u> does not apply to cases such

as the movant's, where the proceeds involved were from conspiracy to commit wire and mail fraud. Therefore <u>Santos</u> is inapplicable in this case.

<u>Claim 17</u>

Movant claims that counsel failed to object to the government's inappropriate use of expert testimony. (CV DE#1 p 54) He claims that government witness Joanne Leavitt improperly testified as an expert witness when she testified that the movant had received taxable income. Parker claims this is opinion testimony. He further claims that she improperly testified he did not file a tax return, because a government witness had already testified to that fact. He states that Leavitt improperly testified he had listed incomes of $150,000 and $200,000 on his credit card application, because the government could have presented this evidence directly to the jury. Further, the government could have presented evidence directly to the jury that the movant received a check within a week of the time Parker Leasing and Financing Service received a wire transfer, without utilizing Ms. Leavitt's testimony. Lastly, he claims counsel failed to request a prior written summary of Leavitt's testimony.

Prior to Leavitt's testimony, co-defendant's counsel expressed objections and the Court permitted her to testify only within specific boundaries (CR DE#307 p. 903-907). Leavitt testified in accordance with the Court's ruling. During her testimony, when it appeared that Leavitt's testimony was expert testimony, movant's counsel objected and the objections were sustained. Counsel made further objections which were overruled.

The fact that Leavitt's testimony could have been presented with direct evidence demonstrates lack of prejudice to the petitioner.

Further, the fact that Leavitt's testimony may have been repetitive of that of another government witness is insufficient to establish prejudice.  As to petitioner's claim that counsel failed to request a written summary of Leavitt's testimony, this is refuted by the record. (CR DE#307 p 903).

Claim 18

    The movant claims that counsel failed to object to a variance between the indictment and what was proven at trial.

    Due process and the Sixth Amendment require that an Indictment state the elements of an offense charged with sufficient clarity to apprise a defendant of the charges against him.  Russell v. United States, 369 U.S. 749, 763-64 (1962).  An Indictment is sufficient if it "'contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet,' [and it] enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." Government of Virgin Islands v. Moolenaar, 133 F.3d 246 (3 Cir. 1998), citing Russell, supra.

    Movant claims that the indictment states he caused Parker Financing and Leasing Inc. (PFLI) and Parker Leasing and Financing Service (PLFS) to commit all of the acts contained in the indictment. Movant claims that there was no evidence presented at trial that as an officer of PFLI, he engaged in fraudulent acts. The movant is again attempting to distance himself from PLFS, however the interchange of the two names for the Parker operation is not a substantial variance. The evidence at trial established that the victims dealt with Parker Leasing through Robert and Paul Parker, Rocillo and others. The bank accounts and advertisements were in the

name of PLFS. Although PFLI, which listed both Gary and Robert Parker as officers,  was administratively dissolved around September 21, 2001, the Parker operation remained at the same location under the names Parker Financial and Leasing Inc., and Parker Leasing and Financing Service. He continued to receive funds sent to PLFS. It is clear the victims made no distinction and provided advance funds to Parker Leasing.

Claim 19

Movant claims counsel should have issued subpoenas to certain government witnesses to testify for the defense. (CV DE#1 p 60). Movant claims counsel should have subpoenaed victim witnesses to testify whether they had received the amortization tables which the government witness Rocillo testified she had received from the movant.

Rocillo did not testify she had been provided the amortization tables for the victims, but that the petitioner had provided her with these tables for her to calculate the appropriate figures to insert in the various contracts. (CR DE#307 p 721, 814). Again, this testimony would have been contradictory to his defense, that he was not involved in the creation of the contracts.

Claims 20 and 21

The movant alleges that counsel failed to call Bobbie Shaw to testify on his behalf (Claim 20). He claims that Shaw was an employee during the time the conspiracy allegedly occurred and could have provided testimony in his defense. He provides an affidavit of her proposed testimony as follows: 1) the phone calls between Parker Leasing and Financing Service and the movant's phone number were

calls between herself and the movant's father, 2)faxes sent by Paul
Sr. were to her and of a personal nature, 3) money sent to the movant
was for Paul Sr.'s grandchildren, 4) Rocillo never called or faxed
anything to the petitioner, and 5) she never observed anything of a
business nature between the movant and his family.

Shaw states she received approximately $250,000 from Parker Sr.
as a gift. (DE#1 Exhibit D). This would have made her testimony less
than credible upon government examination.  Further, her statements
are in direct contradiction to the testimony of Rocillo, who
testified as to the involvement of the movant in the creation of the
contracts. (CR DE#307). Phone records and fax transmissions supported
Rocillo's testimony at trial. Also evidence that within a few days
from receipt of the victim's advance fees, a check was deposited in
the petitioner's account makes her statements less than credible.
Even if Shaw had testified as to her statements in the affidavit,
there was sufficient evidence so that it would not have changed the
outcome of the trial.

The movant states that his daughter, Jennifer Campbell, should
have been called to testify that her grandfather sent money to pay
her college and personal expenses (Claim 21). This testimony would
have been highly suspect as biased in favor of her father, and does
not demonstrate that the money was not sent as a result of her
father's fraudulent business dealings.

Claim 22

Movant alleges counsel refused to obtain an expert witness to
testify at trial that the victim's failure to receive a refund of the
advance fees which they provided to PLFS was consistent with the
terms and conditions of the contract, requiring a letter of credit

prior to receiving funding. Once again, this testimony would have been irrelevant to the movant's defense of non-involvement with the contracts and victims.

Claim 23

In Claim 23, the movant alleges that counsel failed to request a jury instruction to the effect that fraud cannot be alleged when it concerns an issue covered by or contradicted by a clause in the contract. (CV DE#1 p 72). Parker claims that the witnesses testified they knew they were not in compliance with the terms and conditions of the contract when they remitted their deposits, because they had not provided a letter of credit. As stated previously, this jury instruction would be in direct contradiction to movant's defense, that he was never associated with the witnesses, nor the contracts.

Claim 24

The movant claims that counsel failed to challenge the reasonableness of his sentence based upon a comparison of fraud sentences imposed nationwide. (CV DE#1, p 74).

The movant's sentence was based upon the Court's decision to impose an upward variance predicated on the fact he had previously been convicted for a similar fraud. At sentencing counsel argued the Court should sentence him to forty-eight months, and disregard his prior conviction. The Court disagreed, and upon review of the factors in 3553(a), was disturbed by the petitioner's prior record. The Court took into account the victims who suffered, the sophistication of the crime and the fact that the defendant had committed a similar offense before. The Court found the guideline range insufficient punishment

28

for the crimes committed. (CR DE#300 p 86-89)

Counsel preserved the issue for appeal. The Eleventh Circuit affirmed the petitioner's sentence, finding the sentence enhancements reasonable. <u>Parker</u>, <u>supra</u>. Counsel cannot be ineffective for failing to raise a meritless claim. <u>Matire v Wainwright</u>, <u>supra</u>.

<u>Claims 25</u>

Counsel was ineffective when he repeatedly used the name Parker Financing and Leasing rather than Parker Leasing and Financing Service. The movant claims the government failed to produce evidence that PFL Inc, dissolved in 2001, of which he was on the Board, had any involvement in the fraudulent activity. He also claims he had no affiliation with Parker Leasing and Financing Service. He claims that counsel's error may have led the jury to believe that the fraud was committed by Parker Financing & Leasing, of which he was an officer, rather than Parker Leasing and Financing Service.

The movant raises a claim similar to this again and again. He attempts to disclaim any involvements with Parker Leasing and Financing Service, owned by his father, which perpetrated the fraudulent schemes. He repeatedly argues that the jury was being purposely misled as to which company was responsible for the fraud. However, the jury was apprised from the beginning of the trial that the government would interchange the names of the company. but that Parker Leasing and Financing Service was the company which entered into the fraudulent contracts. Clearly the jury, when presented with the evidence, found the movant guilty of his part in the fraudulent scheme.

<u>Claim 26</u>

The movant claims counsel failed to object to the government's repeated use of the terms "the Parkers" or Parker Leasing" throughout the trial in an attempt to lump the defendants and companies together, thereby prejudicing him.

Robert Parker and Gary Parker were tried as co-conspirators. It therefore is not unreasonable to refer to them as "the Parkers". The jury was instructed to consider each charge and evidence pertaining to it separately, as well as to consider the case of each defendant separately and individually (CR DE#232 Jury Instruction 17 p 32).

Lastly, even if counsel failed to object to the terminology, the Appellate Court found sufficient evidence against Gary Parker to convict him of being part of the conspiracy. <u>Parker</u>, <u>supra</u>.

<u>Claim 27</u>

The movant alleges that counsel was ineffective for failing to conduct background checks on the government's witnesses for purposes of impeachment. (CV DE#1 p 84). The issue of counsel's failure to impeach certain witnesses has been responded to in Grounds 14, 15, 20 & 21.

<u>Claim 28</u>

Movant claims counsel filed a pre-trial notice of alibi, but failed to raise an alibi defense. (CV DE#1 p 87).   Movant acknowledges that counsel made reference to the fact that he was not living in Florida during the time the offenses were committed, but contends this was insufficient. Government Exhibit B indicates that

counsel filed the notice of alibi as a protective measure, but that there was no evidence presented at trial that the movant was present at the Parker Leasing and Financing Services Office in Florida.

No victim testified as to business dealings with Gary Parker. Counsel was not ineffective for failing to present an alibi defense when no evidence placed him at the offices involved in the scheme. Therefore, there was no need for a alibi defense, and counsel was not ineffective for failing to raise one.

Claim 29

The movant claims that counsel failed to introduce a deposition given by his father in a prior civil lawsuit, in which his father stated that the movant had no business associations with either him or the Parker Leasing and Financing Service, and that he had not seen the movant for several years, including the time period in the indictment. He states that he was exonerated in that civil suit.

Movant's father was deceased at the time of trial and his deposition may have violated the government's rights of confrontation. Further, the standard of proof in a civil lawsuit is less than that of a criminal lawsuit, and the fact that the petitioner was exonerated in the civil lawsuit is irrelevant in this criminal case.

Claim 30

Counsel failed to request a severance at trial. (CV DE#1 p 92). If the trial had been severed, the movant claims Robert Parker would have testified that the movant was not involved in the business and that the money sent to him from the business was for his children.

The general rule is that coconspirators should be tried jointly. United States v. Sawyer, 799 F.2d 1494 (11 Cir. 1986); United States v. Esle, 743 F.2d 1465, 1476 (11 Cir. 1984)(quoting United States v. Berkowitz, 662 F.2d 1127, 1132 (5 Cir. Unit B 1981).

To obtain severance on the grounds that a co-defendant would testify favorably for a co-defendant if the trials were severed a defendant mut show: 1) a bona need for the testimony, 2) the substance of the desired testimony, 3) the exculpatory nature and effect of the testimony and 4) that the co-defendant would testify at a separate trial. United States v Navaton, 271 F.3d CIT (11 Cir. 21001), United States v Cobb, 185 F.3d 1193 (11 Cir. 199).

Severance is mandatory only if these is a serious risk a joint trail would compromise a specific right of one of the defendants or prevent the jury from making a reliable judgement about guilt or innocence. Zafiro v United States , 506 U.S. 534, 539 (19993)

In this case, if the trial was severed, the testimony of Paul Parker would have been cumulative of what was presented at trial; that the movant was out of the state during the transactions, that he received money from the business for his children, and that he never conducted business with Parker Leasing and Financial Service, or his father or brother. The evidence before the jurors was sufficient for them to convict Gary Parker, along with his brother. The evidence against Gary Parker was found sufficient by the Appellate Court. Parker, supra.

Claim 31

The movant claims counsel was ineffective for failing to investigate whether he was properly indicted by at least twelve

members of the grand jury. (CV DE#1 p 95). There is a presumption of regularity in the grand jury process. <u>United States v Flemmi</u>, 245 F.3d 24 (1st Cir. 2001). To be entitled to production, the defendant must show a "particularized need" for the documents that outweighs the public policy of grand jury secrecy. <u>United States v Warren</u>, 747 F.2d 1339 (10 Cir. 1984).

In this case the movant has failed to provide any reason, other than to have counsel embark on a fishing expedition, to find some irregularity on which to base a motion to dismiss the indictment. This claim is without merit.

<u>Claim 32</u>

Movant alleges counsel was ineffective for failing to subpoena a representative from the Bank of America to testify he did not cash checks in the total amount of $496.350, the amount attributed to him at trial. (CV DE#1 p 98). He claims that government witness Leavitt's testimony and the language in the superseding indictment were calculated to make it appear to the jury that he was involved in suspicious activity.

Examination of the bank accounts associated with Parker Leasing and Financing Service admitted at trial reveals that the victims wires and checks had gone into Parker Leasing and Financing Service accounts. Within a few days of the funds being deposited into bank accounts in Ft. Lauderdale, a check or cashier's check would be sent from Ft Lauderdale to the movant. (CR DE# 308 p 1003-1004). The movant would deposit these checks into one of his two accounts at First Tennessee Bank (p991-992). One account was in his name and the other in the name of Parker Leasing Service, but he was sole signatory on both accounts.

It was undisputed at trial that some of the money was given to his children for deposit in their accounts. Counsel introduced those records at trial. (CR DE#308 p 1085).  However, undisputed testimony at trial established that approximately 1.2 million dollars was deposited into the movant's First Tennessee Bank accounts. Less than half was deposited into his children's Bank of America Accounts. Clearly evidence revealed money going from Parker Leasing and Financing to the movant.

Conclusion

Counsel for the movant provided a vigorous defense. He reviewed thousands of documents, obtained bank records, investigated related civil and criminal cases, some of which included Gary Parker as a defendant, filed several motions to obtain discovery, memorandums of law, responses to the governments request, and cross examined witnesses as appropriate. The Pre Sentence Investigation Report was discussed, and objections filed and argued to the Court during sentencing. Issues were preserved for appeal. The movant has failed to demonstrate that his counsel's performance was ineffective, or that he suffered any prejudice from his representation. Strickland, supra.

It is therefore recommended that this motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated this 2nd day of August, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Gary N. Parker, <u>Pro Se</u>
     Reg#76593-093
     FCI-Forrest City
     Forest City, AR
     Address of record

     Thomas Lanigan, AUSA
     Office of US Attorney
     Ft. Lauderdale, FL
     Address of Record